IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHANDAR A. SNOW,                   :      CIVIL ACTION NO. **3:CV-13-0789**
                                   :
        Plaintiff                  :      (Judge Captuo)
                                   :
        v.                         :      (Magistrate Judge Blewitt)
                                   :
UNITED STATES OF AMERICA, *et al.*, :
                                   :
                                   :
        Defendants                 :

## REPORT AND RECOMMENDATION

I.      **BACKGROUND.**

On March 27, 2013, Plaintiff Chandar A. Snow[1], an inmate at USP-Lewisburg located in

Lewisburg, Pennsylvania, filed, *pro se*, this instant *Bivens*[2] civil action, pursuant to 28 U.S.C. §1331.

(Doc. 1).  Plaintiff's Complaint consists of eight (8) hand-written, single-spaced pages.  (*Id.*).  Plaintiff

also filed a 2-page, hand-written Affidavit in support of his  Complaint consisting  of 15 sentences.

(Doc. 1-1).  On March 27, 2013, Plaintiff filed a Motion for Leave to proceed *in forma pauperis* and

_____

[1]Plaintiff Snow filed a prior §2241 habeas petition against USP-Lewisburg Warden
Bledsoe on May 11, 2012. *See* 3:CV-12-0882, M.D. Pa.  On September 18, 2012, the Court
adopted our R&R and dismissed Snow's habeas petition.  Snow filed a Notice of Appeal with
the Third Circuit Court of Appeal, and the third Circuit affirmed the District Court's September
18, 2012 Order.

[2]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct.
1999 (1971).  Plaintiff 's instant action falls within 28 U.S.C. § 1331 ("The district courts shall
have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the
United States." (Emphasis added).  This case is a *Bivens* action because Plaintiff seeks monetary
damages from federal officials for alleged violations of his constitutional rights. *See Oriakhi v.
Wood*, 2006 WL 859543, * 1, n. 1 (M.D. Pa.); *Conway v. Lindsay*, 2009 WL 1956282 (M.D.
Pa.).

used an improper form.  (Doc. 2).  On April 8, 2013 Plaintiff filed a second Motion for Leave to Proceed *in forma pauperis* using the proper form.  (Doc. 5).  Furthermore, Plaintiff correctly states that the Court has jurisdiction over his Complaint pursuant to 28 U.S.C.  § 1331 and 1343(a)(3).  (Doc. 1, p. 1).  We will now screen Plaintiff's Complaint in  accordance with § 1915 of the PLRA.

## II.    STANDARDS OF REVIEW.

### A.    PLRA

The Prison Litigation Reform Act of 1995,[3] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

### B.    *BIVENS* STANDARD

A *Bivens* civil rights action under § 1331 has the same standards as does a § 1983 civil rights action.  In *Naranjo v. Martinez*, 2009 WL 4268598, *6 (M.D. Pa.), the Court stated:

> *Bivens* creates no substantive rights, but rather allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504,

---

[3]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). A civil rights claim brought under Bivens is the federal counterpart to an action brought under 42 U.S.C. § 1983, and the same legal principles governing a § 1983 claim apply to a *Bivens* claim. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir.2001); *Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir.1975); *Cyrus v. Hogsten*, No. 06-2265, 2007 WL 88745, at *3 (M.D.Pa. Jan.9, 2007). To state a claim under *Bivens,* the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. *Brown*, 250 F.3d at 800; *Cyrus*, 2007 WL 88745, at *3.

Civil rights claims may only be brought against "persons." 42 U.S.C. § 1983. Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir.2005); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997), abrogated in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) (collecting cases).

It is well-established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's

claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id.*  Courts have also

held that an allegation seeking to impose liability on a defendant based on supervisory status,

without more, will not subject the official to liability. *See Rode,* 845 F.2d at 1208.

In screening a Complaint under the PLRA, the Court uses the same standard that it uses to

determine a Rule 12(b)(6) Motion to Dismiss. *See Banks v. County of Allegheny*, 568 F.Supp.2d 579,

588 (W.D. Pa. 2008).

## C.     MOTION TO DISMISS STANDARD

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court

stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard
> applicable to a motion to dismiss in light of the United States Supreme Court's
> decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v.
> Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009).  "[T]o survive a motion to dismiss, a
> complaint must contain sufficient factual matter, accepted as true to 'state a claim
> that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550
> U.S. at 570). The Court emphasized that "only a complaint that states a plausible
> claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued,
> "[d]etermining whether a complaint states a plausible claim for relief will ... be a
> context-specific task that requires the reviewing court to draw on its judicial
> experience and common sense." *Id.* (citation omitted).  *McTernan v. City of York,*
> 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of

*Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " Guirguis v. Movers Specialty Services, Inc., No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

## III.   COMPLAINT ALLEGATIONS.

In his Complaint filed on March 27, 2013, Plaintiff Snow alleges that the Defendants, namely, the United States of America, Warden B.A. Bledsoe, Charles E. Samuels, Federal Bureau of Prison ("BOP") Regional Director, and the "Special Ambulatory Restraints Team," have violated his Eighth Amendment right against cruel and unusual punishment by their use of excessive force. (Doc. 1, p. 2).   Plaintiff states that each Defendant is being sued individually and in his or her official capacities. (*Id.*).

Plaintiff alleges that on May 13, 2011, he arrived at USP - Lewisburg and was confined in the Special Management Unit ("SMU"), and was placed in D-Block on the first floor. After being in the SMU for three days, on May 16, 2011, Plaintiff asked to speak to a psychologist about mental illness and stress. Plaintiff saw Dr. Cannon from the Lewisburg Psychology Department. After his interview with Dr. Cannon, Plaintiff states he was placed on suicide watch for a few days commencing on a Friday. Plaintiff further states that in the BOP they have "inmate companions" for inmates that are on suicide watch. According to Plaintiff, an inmate companion monitors the inmate on suicide watch and "log their every movement." (*Id.*, p. 3). Plaintiff also states that a psychologist is supposed to talk to an inmate on suicide watch.

Furthermore, Plaintiff states that he did not speak to anyone for the entire weekend he was on suicide watch. On Monday, Dr. Cannon went to interview Plaintiff. Plaintiff states that he continued to remain silent. Plaintiff avers that Dr. Cannon said "If you don't speak to me I got to turn you case over to the captain of the prison." (*Id.*, pp. 3-4). Plaintiff remained silent for another twenty minutes and the Special Ambulatory Restraint Team ("SART") was called in. Plaintiff alleges that the SART ordered him to "cuff-out" and he did so with no resistance. Plaintiff states that he was stripped naked, put in paper clothes, and then put in "super-tight" restraints. Plaintiff further states that he was taken to a restraint cell. Subsequently, Plaintiff avers that he was given an incident report regarding why he was placed in restraints. Plaintiff alleges that the incident report charged him with BOP Codes 203 and 307, and indicated that he was placed in restraints because he threatened his cell-mate. (*Id.*, p 4 & "Doc. 1-1). Plaintiff states that the day after he was put in restraints, his "nerves in my hands messed up, and scars to my bones around my wrist and legs (also

lower chest, side of stomach)." (*Id.*, p. 4).

Additionally, Plaintiff states that he had an appeal pending with the Sixth Circuit Court, namely, his federal conviction and sentence for which he was confined in prison. Plaintiff further states that since he was in restraints, he could not respond to the Sixth Cicuit's "offer," and he could not write to the Court to notify them that his address changed from USP - Coleman, Florida to USP - Lewisburg. Plaintiff alleges that he lost his appeal case with the Sixth Circuit because he was seven (7) days late in responding to them "because my nerves in my hands [were] messed up so bad [that he] couldn't write for weeks." (*Id.*, p. 4). Plaintiff alleges that this denied him access to the Court "after years of trying to get in the Courts." (*Id.*).

Furthermore, Plaintiff states that he was seen by the Disciplinary Hearing Board ("DHO") a few months later regarding the incident report charging him with threatening his cell mate which lead to his placement in the restraints. Plaintiff states that the DHO asked him if he threatened his cell mate and he told the DHO that he did not threaten his cell-mate. Plaintiff avers that he was on suicide watch, and did not have a cell-mate at the time of the alleged threat. Plaintiff states that the DHO continued his disciplinary hearing so he could review the prison log to see if Plaintiff was on suicide watch. Plaintiff states that "Then when I came back after [the DHO] review the log, [the DHO] said, the secretary seen me talking to Dr. Cannon and then [Dr. Cannon] put me on suicide-watch. I [Plaintiff] told [the DHO] to review the inmate's companion log and the psychologist that came in on the weekend to see me. I said I never spoke to them. He [DHO] found me guilty for threatening my cellie *(sic)* that I never had." *(Id.*, p. 5).

Plaintiff states the following with regard to his exhaustion of his BOP administrative

remedies: "I [Plaintiff] will amend all administrative remedies, affidavits, documents and exhibits to this Complaint very shortly. I [Plaintiff] had to put all of my important legal papers away because of the mistreatment and torture that [has] been done to me and is being done to me." (Doc. 1, pp. 5-6).   It is not clear if Plaintiff exhausted his BOP administrative remedies with respect to his instant claims.[4]

We also note that Plaintiff alleges denial of access to medical care in his sworn Affidavit for the damage to nerves in his hands and legs caused by the restraints. (Doc. 1-1, p. 2).  Plaintiff does not state which prison staff allegedly denied him medical care. Also, in his Affidvit, Plaintiff avers that he filed administrative remedies with respect to his Eighth Amendment claims. (*Id*.).

Additionally, Plaintiff alleges as his claims that the "The Federal violations are torture etc...This violated Plaintiff Chandar A. Snow['s] rights and constituted cruel and unusual punishment rights under the Eighth or Fourteenth Amendment to the United States Constitution. Also [the] First Amendment, for access to the courts." (Doc. 1, p. 6).

Furthermore, Plaintiff states that he "has no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured

---

[4]It is well-settled that the Plaintiff must exhaust all of his available administrative remedies with respect to each one of his claims prior to filing a civil rights suit.  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*  However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

by the conduct of the Defendants unless this Court grants the declaratory and injunctive relief which Plaintiff seeks." (Doc. 1, p. 6).

As relief, Plaintiff is requesting the following: (1) A declaration that the facts and omissions described herein violated Plaintiff's rights under the Constitution of the United States; (2) a preliminary and permanent injunction ordering Defendants to stop assaulting and torturing Plaintiff while he is incarcerated at USP-Lewisburg's Special Management Unit; (3) One hundred and fifty thousand dollars ($150,000.00) in compensatory damages against each Defendant; (4) Two hundred and fifty thousand dollars ($250.000.00) in punitive damages against each Defendant; (5) a jury trial on all issues triable by jury; (6) Plaintiff's costs in the suit; and (7) Any additional relief this court deem just, proper, and equitable. (Doc. 1, pp. 6-7).

Regarding Plaintiff's requests for both compensatory and punitive damages, to the extent that Plaintiff seeks monetary damages from Defendants, all employees of the BOP, in their official capacities, we will recommend that these requests for relief be dismissed with prejudice as Plaintiff can only seek monetary damages from Defendants in their personal capacities. *See Breyer v. Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998); *Douglas v. BOP,* Civil NO. 08-0140 (M.D. Pa.); *Debrew v. Auman*, 354 Fed. Appx. 639, 641 (3d Cir. 2009)(Per Curiam). Thus, Plaintiff's claims for monetary damages to the extent they are against Defendants in their official capacities should be dismissed with prejudice. The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir.

9

2004). However, based on well-settled law, we find futility in granting Plaintiff leave to amend his damages claims against Defendants in their official capacities and, thus, these claims should be dismissed with prejudice.

Further, Plaintiff seeks specific amounts of compensatory and punitive damages against Defendants. *(Id.)*. Plaintiff's requests for specific amounts of monetary damages (Doc. 1, p. 7) should be stricken. Since Plaintiff seeks unliquidated damages, he cannot claim specific sums of relief. Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's requests for specific monetary damages should be stricken from his Complaint. *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure; *Said v. Donate*, Civil No. 07-1550, M.D. Pa.

**IV.     DISCUSSION.**

*1.     Defendant United States of America*

Insofar as Plaintiff is suing Defendant United States for violations of his civil rights, *i.e.* denial of proper medical care, excessive force, and denial of access to the courts, the law is clear that *Bivens* "only authorizes suit against federal officials in their individual capacities and not against the United States and federal agencies." *Goodson v. Maggi*, 2010 WL 1006901, *7 (W.D. Pa. 2-22-10); *Debrew v. Auman*, 354 Fed. Appx. 639, 641 (3d Cir. 2009)("no claims [under *Bivens*] could properly be brought against Defendants in their official capacities.")(citation omitted). As such, we will recommend that Defendant United States be dismissed with prejudice based on the doctrine of sovereign immunity. *See Conway v. Lindsay*, 2008 WL 2562949, *2 (M.D. Pa. 6-24-08)(citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)). Also, as stated above, we will recommend that Plaintiff's claims for monetary damages against all Defendants in their official capacities be

dismissed with prejudice.

The Court in *Johnson* stated:

> An action brought against federal agencies, or federal employees in their
> official capacities, is effectively an action against the United States. *Ky v.
> Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). It is
> well settled that the United States has sovereign immunity except where it
> consents to be sued. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct.
> 1349, 63 L.Ed.2d 607 (1980). Sovereign immunity extends to government
> agencies and employees sued in their official capacities. *Antol v. Perry,* 82
> F.3d 1291, 1296 (3d Cir.1996). In addition, a waiver of sovereign immunity
> "cannot be implied but must be unequivocally expressed." *Mitchell,* 445 U.S.
> at 538.
> First, regarding Johnson's constitutional claims against the Federal Defendants,
> Congress has never waived sovereign immunity for constitutional tort claims
> against the United States, its agencies, or employees sued in their official
> capacity. *FDIC v. Meyer,* 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308
> (1994); *Graham,* 473 U.S. at 166-68. In addition, Congress has not waived
> sovereign immunity for RICO claims, *Jennette v. Holsey,* No. 06-874, 2006
> WL 1984734, at *1 (M.D.Pa. May 31, 2006); *Delker v. United States,* No. 86-
> 2712, 1986 WL 11701, at *1 (E.D.Pa. Oct.16, 1986), or for claims for
> conspiracy to interfere with civil rights under 42 U.S.C. § 1985, and negligent
> failure to prevent conspiracy to interfere with civil rights under 42 U.S.C. §
> 1986. *Davis v. U.S. DOJ,* 204 F.3d 723, 726 (7th Cir.2000); *Affiliated Prof'l
> Home Health Care Agency v. Shalala,* 164 F.3d 282, 286 (5th Cir.1999); *Biase
> v. Kaplan,* 852 F.Supp. 268 (D.N.J.1994); *Wilson v. Rackmill,* No. 87-456,
> 1990 WL 63504 at *4 (E.D.Pa. May 11, 1990).
> Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the
> United States'] consent to be sued in any court define that court's jurisdiction
> to entertain the suit.' " *FDIC,* 510 U.S. at 475. Thus, because the United States
> has not waived its sovereign immunity for constitutional tort, RICO, or §§
> 1985 and 1986 claims against its agencies or its federal employees in their
> official capacities, these claims against the Federal Defendants must be
> dismissed for lack of subject matter jurisdiction pursuant Federal Rule of Civil
> Procedure 12(b)(1).

2010 WL 2991409, *2-*3.

Thus, we will recommend that Defendant United States be dismissed with prejudice.

Based on the above, we find futility in allowing Plaintiff to amend his constitutional claims

against Defendant Untied States.  *See FDIC v. Meyer, supra*.

    2.  *Lack of Personal Involvement of Defendants Warden Bledsoe and BOP Director Samuels*

As discussed, in a *Bivens* civil rights action, the Plaintiff must prove the following two

essential elements:  (1) that the conduct complained of was committed by a person acting under

color of federal law; and (2) that the conduct complained of deprived the Plaintiff of rights,

privileges or immunities secured by the law or the Constitution of the United States.  *Naranjo v.*

*Martinez*, 2009 WL 4268598, *6.  With regards to Defendant Samuels, Plaintiff merely states in

the "Defendants" section of his Complaint,  that Samuels is "legally responsible for the overall

operation of the [BOP] ane each institution under its jurisdiction, including [USP-Lewisburg,

SMU]." (Doc. 1, p. 2). However, with regards to Defendant Samuels, aside from his supervisory

role with the BOP and his being named as a Defendant (Doc. 1, p. 2), Plaintiff does not even

mention his name in his facts, legal claims, and, prayer for relief sections of his Complaint.

Therefore, Plaintiff has failed to allege the personal involvement of Defendant Samuels in

regards to his constitutional claims.  Rather, it is clear that Plaintiff has named as Defendant

Samuels solely on the basis of *respondeat superior* which is not  permissible in a civil rights

action.

Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose

Complaint fails to state a cognizable claim is entitled to amend his pleading unless it finds bad

faith, undue delay, prejudice, or futility.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103,

111 (3d Cir. 2002);  *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). However, because

Plaintiff has failed to provide the Court with any facts whatsoever in relation to his constitutional

claims against Defendant Samuels and because Plaintiff has named this Defendant only on the basis of *respondeat superior*, we will recommend that Defendant Samuels be dismissed from this action with prejudice as we find futility in allowing Plaintiff to amend his Complaint with respect to this Defendant. *See Grayson, supra.*

With regards to Defendant Bledsoe, Plaintiff merely states in the "Defendants" section of his Complaint, that Bledsoe is "legally responsible for the operation of USP-Lewisburg for the welfare of all the inmates in that prison." (Doc. 1, p. 2). Therefore, Plaintiff avers that Defendant Bledsoe was involved solely through his position was Warden and based on the doctrine of *respondent superior*.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior."* ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought
> under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S.
> at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (non-precedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

The Court in *Rogers,* 696 F.Supp.2d at 488, repeated the personal involvement necessary in civil rights action, and stated:

> When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id. quoting Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Section 1983 [or 1331] liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293-1295 (3d Cir.1997) (to hold police chief liable under § 1983 [or1331] for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. *Rode,* 845 F.2d at 1208; *Cooper v. Beard,* 2006 WL 3208783 at *14 (E.D.Pa. Nov. 2, 2006).

Additionally, in *Saltzman v. Independence Blue Cross*, 2009 WL 1606887, *4 (E.D. Pa.), the Court stated:

> The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does

not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 555); *see also Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing *Twombly,* 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).

Based on the above-detailed allegations in Plaintiff's Complaint, it is clear that Plaintiff fails to state the requisite factual specificity and allegations of personal involvement with regards to his constitutional claims as against Defendants Bledsoe. Plaintiff does not claim any wrongdoing by this Defendant in his Complaint.

Therefore, because it appears that Plaintiff has named Defendant Warden Bledsoe solely on the basis of *respondeat superior* which is not permissible in a civil rights action, we will recommend that Defendant Bledsoe be dismissed without prejudice from this action. It is not clear if it would be futile in allowing Plaintiff to amend his Complaint against Defendant Bledsoe. *See Grayson, supra*.

3.    *Eighth Amendment Denial of Proper Medical Care Claim*

As stated above, Plaintiff alleges in his Affidavit that he was denied medical care after his restraints were put on his wrists and legs too tightly. (Doc. 1-1, p. 2). Plaintiff asserts an Eighth Amendment denial of proper medical claim, however, he does not name anyone that was personally involved. Plaintiff does not state who denied him the medical care after his restraints

15

were removed.

In *Carpenter Carpenter v. Kloptoski*, 2011 WL 995967, *6 (M.D. Pa. 3-17-11)*, the Court

stated:

> To demonstrate a prima facie case of Eighth Amendment cruel and unusual
> punishment based on the denial of medical care, plaintiff must establish that
> defendants acted with deliberate indifference to his serious medical needs.
> *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976);
> *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993). There are two components
> to this standard: First, a plaintiff must make an "objective" showing that the
> deprivation was "sufficiently serious," or that the result of the defendant's denial
> was sufficiently serious. Additionally, the plaintiff must make a "subjective"
> showing that defendant acted with "a sufficiently culpable state of mind."
> *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991);
> *see also Montgomery v. Pinchak,* 294 F.3d 492, 499 (3d Cir.2002). The
> "deliberate indifference to serious medical needs" standard is obviously met
> when pain is intentionally inflicted on a prisoner, when the denial of reasonable
> requests for medical treatment exposes the inmate to undue suffering or the
> threat of tangible residual injury, or when, despite a clear need for medical care,
> there is an intentional refusal to provide that care. *See Spruill v. Gillis,* 372 F.3d
> 218, 235 (3d Cir.2004) (quoting *White v. Napoleon,* 897 F.2d 103, 109 (1990);
> *Monmouth County Corr. Inst. Inmates v. Lensario,* 834 F.2d 326, 346 (3d
> Cir.1987).

As stated above, we find that Plaintiff has not sufficiently alleged the  personal

involvement of any prison official with respect to his denial of medical care claim.   As such, we

will recommend that Plaintiff be allowed to amend his Complaint to properly state who was

personally involved with regard to his Eighth Amendment denial of medical care claim.

    4.    *Eighth Amendment  Excessive Force Claim*

As detailed above, Plaintiff claims that his Eighth Amendment right to protection from

excessive force was violated by the Special Ambulatory Restraints Team ("SART").  To reiterate,

Plaintiff alleges that the SART ordered him to "cuff-out" and he did so with no resistance.

Plaintiff further alleges that he was stripped naked, put in paper clothes, and then put in "super-tight" restraints. Plaintiff further states that he was taken to a restraint cell. Furthermore, Plaintiff avers that the day after he was put in restraints that his "nerves in my hands messed up, and scars to my bones around my wrist and legs (also lower chest, side of stomach)." (Doc. 1, p. 4).

As the Court stated in *Freeman v. Bronkoski*, 2008 WL 4414725, *4 (M.D. Pa.):

> The Third Circuit Court of Appeals has noted that "[a]fter conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).
>
> In considering such a claim, the fact-finder must determine " 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson v. McMillan*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L. Ed. 2d 156 (1990)). When " 'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain," summary judgment is inappropriate for the defendant. *Id.* (quoting *Whitley v. Albers*,475 U.S. 312, 322, 106 S.Ct. 1078, 89 L. Ed. 2d 251 (1986)). Five factors apply in determining whether a correctional officer excessive force: "(1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of the injury inflicted;'' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of the response.'" Id. (quoting Whitley, 475 U.S. at 321).

*See also Bright v. Gillis*, 89 Fed. Appx. 802, 805 (3d Cir. 2004) (Court stated the factors in establishing an Eighth Amendment excessive force claim against prison staff).

The Court in *Wesley v. Dombrowski*, 2004 WL 1465650 *6 (E.D. Pa.), stated:

> "The core inquiry in claims of excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm'." (Citing *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

We find that Plaintiff has not sufficiently alleged personal involvement of any prison staff with regard to his excessive force claim. Plaintiff must name the personal involvement of each Defendant prison staff member and factual information to support his Eighth Amendment excessive force claim. Based on the above, we find that Plaintiff has not sufficiently alleged personal involvement of the individual members of the Special Ambulatory Restraints Team. We will recommend that Plaintiff be allowed to amend his Eighth Amendment claims against proper Defendants who were personally involved with this claim as opposed to naming the Special Ambulatory Restraints Team as a Defendant. Thus, we will recommend that Plaintiff be allowed to amend his Eighth Amendment excessive force claim against proper Defendants who were personally involved with this claim.

5.      *First Amendment Denial of Access to the Courts*

As stated above, Plaintiff alleges he had a case with the Sixth Circuit Court of Appeals involving his federal conviction and sentence that he was appealing. Plaintiff avers that he could not respond to the Sixth Cicuit's "offer," and he could not write to the Court to notify them that his address changed from USP - Coleman, Florida to USP - Lewisburg. Plaintiff further alleges that he lost his appeal case with the Sixth Circuit because he was seven (7) days late in responding to the Court "because my nerves in my hands [were] messed up so bad [that he] couldn't write for weeks." (Doc. 1, p. 4). Plaintiff alleges that this denied him access to the Court "after years of trying to get in the Courts." (*Id.*).

In *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179:

> 153 L.Ed.2d 413 (2002), the Supreme Court set forth
> specific criteria that a court must consider in determining
> whether a plaintiff has alleged a viable claim of right to
> access to the courts.  Specifically, the Supreme Court held
> that, in order to state a claim for denial of access to courts,
> a party must identify all of the following in the complaint:
> 1) a non-frivolous, underlying claim; 2) the official acts
> frustrating the litigation; and 3) a remedy that may be awarded
> as recompense but that is not otherwise available in a future
> suit.  *Christopher*, 536 U.S. at 415.

We find that while Plaintiff may have stated a  First Amendment denial of access to the

courts claim, Plaintiff has not sufficiently alleged the personal involvement of any prison official

with regards to such a claim. Based on Plaintiff's alleged facts above, we will recommend that

Plaintiff be allowed to amend his First Amendment denial of access to the courts claim against

proper Defendants who were personally involved with this claim.

6.      *Alleged Wrongful Disciplinary Conviction for Threatening Cell-Mate*

As stated above, Plaintiff is challenging the incident report filed against him by an

unnamed prison official charging him with BOP Codes 203 and 307 violations and, the

disciplinary conviction by an unnamed Disciplinary Hearing Officer (DHO) at USP-Lewisburg

who found him guilty of threatening his cell-mate. Plaintiff's challenge of the disciplinary

conviction by the DHO, to the extent Plaintiff  was  sanctioned to loss of good conduct time, is

barred under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

Plaintiff states that he was convicted at a disciplinary hearing by the DHO and, insofar as

his sanctions affect the duration of his confinement in prison, Plaintiff's constitutional claims

challenging the Incident Report and disciplinary conviction are *Heck* barred until he has the

19

disciplinary conviction overturned on appeal or *via* a habeas petition under 28 U.S.C. §2241.

*See Heck v. Humphrey*, 512 U.S. at 486-87.

In *Heck*, the Supreme Court stated:

> A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487. *See also Murphy v. Bloom*, 443 Fed.Appx. 668, 669 (3d Cir. 2011).

Thus, insofar as Plaintiff is challenging the DHO's guilty finding that Plaintiff threatened his cell mate and to the extent Plaintiff was sanctioned to loss of good conduct time, this claim is *Heck* barred. We will recommend that Plaintiff's wrongful disciplinary conviction claim be dismissed without prejudice until Plaintiff has his conviction overturned by filing a habeas petition under 28 U.S.C. §2241.

7.    *Plaintiff's request for Declaratory Judgment*

In his Complaint, Plaintiff states that he seeks declaratory relief, pursuant to 28 U.S.C. § 2201 and § 2202, seeking the Court to declare that alleged past conduct of unnamed prison officials during May 2011, at USP-Lewisburg, violated his constitutional rights. Plaintiff cannot seek declaratory judgment for alleged past violations of his constitutional rights.

In *Blakeney v. Marsico*, 340 Fed.Appx. 778, 780 (3d Cir. 2009), the Court stated:

> To satisfy the standing and "case or controversy" requirements of Article III, a party seeking a declaratory judgment "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir.2003)

(citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102-03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Here, Blakeney seeks a declaration merely that defendants' "acts" and "policies" violate the United States and Pennsylvania Constitutions. He does not allege that he will be subjected to that alleged conduct in the future. Moreover, even if defendants violated Blakeney's rights in the past as he alleges, he is not entitled to a declaration to that effect. *See Brown v. Fauver,* 819 F.2d 395, 399-400 (3d Cir.1987) (directing District Court to dismiss prisoner's Section 1983 claim for prospective relief where appellant "has done nothing more than allege past exposure to unconstitutional state action").

The first issue with Plaintiff's request for declaratory judgment is that he does not specify exactly what he is asking the Court to declare. Secondly, he fails to allege that there is a substantial likelihood that he will suffer injury in the future at USP-Lewisburg if the Court does not issue declaratory judgment. Therefore, because Plaintiff has not met the standards necessary for the Court to issue declaratory judgment, we will recommend that the Court dismiss this request with prejudice, as we find futility in allowing Plaintiff to amend his Amended Complaint with regards to this relief request based on lack of standing. *See Grayson, supra; Blakeney, supra*.

## V.      RECOMMENDATION.

Based on the foregoing, we respectfully recommend that the Court:

1. **DISMISS WITH PREJUDICE** Plaintiff's claims for monetary damages to the extent they are against Defendants in their official capacities.

2. **DISMISS WITH PREJUDICE** Defendants BOP Regional Director Samuels and United States of America.

3. **DISMISS WITHOUT PREJUDICE** Plaintiff's claim that he was wrongfully charged and convicted by the DHO of threatening his cell-mate.

4.     **DISMISS WITH PREJUDICE** Plaintiff's request for Declaratory Judgment.

5.     **DISMISS WITHOUT PREJUDICE** Defendant Warden Bledsoe.

6.     **ALLOW PLAINTIFF TO AMEND** his Eighth Amendment excessive force claim, his Eighth Amendment denial of access to medical care claim, and his First Amendment denial of access to courts claim in order to properly allege the personal involvement of each prison official regarding each claim.




                                        s/ **Thomas M. Blewitt**
                                         **THOMAS M. BLEWITT**
                                         **United States Magistrate Judge**

**Dated: April 16, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHANDAR A. SNOW, | : | CIVIL ACTION NO. **3:CV-13-0789** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| UNITED STATES OF AMERICA, *et al.*, | : | |
| | : | |
| | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **April 16, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof. Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the magistrate judge,

making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Failure to file timely objection to the foregoing Report and Recommendation may

constitute a waiver of any appellate rights.


_____ **s/ Thomas M. Blewitt**
                            **THOMAS M. BLEWITT**
                            **United States Magistrate Judge**


**Dated: April 16, 2013**